MAY ENSIGN, Individually and as Administratrix with the Will Annexed of CHARLES ENSIGN, Deceased, Appellant, *v.* NATHANIEL JARVIS, JR., and CORNELIA HAMILTON, Individually and as Administratrix with the Will Annexed of ELISHA W. ENSIGN, Deceased, Respondents.

Mem. of decision below, 66 Hun, 634.
(Argued June 10, 1895; decided October 8, 1895.)

APPEAL from judgment of the General Term of the Supreme Court, in the fifth judicial department, entered upon an order made January 18, 1893, which affirmed a judgment in favor of defendants entered upon a decision of the court dismissing the complaint upon the merits on trial at Special Term.

The following is the opinion:

" The complaint was dismissed by the Special Term in Erie county, and the judgment affirmed by the General Term of the fifth department.

" This action was brought to compel defendants to account for the proceeds of the sale of certain real estate situated at Fremont, Ohio, alleged to have been held in trust for plaintiff's testator, Charles Ensign.

" The facts are admitted and this appeal presents only questions of law.

" Elisha W. Ensign (whose administratrix with the will annexed is a party defendant) and his wife Jennie, prior to December, 1875, resided in the city of New York at No. 357 West 34th street.

" The title of these premises, as well also of those located at Fremont, Ohio, was vested in Jennie Ensign, the wife of Elisha.

" On the 13th of December, 1875, the Court of Common Pleas for the city and county of New York granted a judgment of absolute divorce in favor of Jennie Ensign against Elisha W. Ensign, and it was further adjudged that the defendant pay to the plaintiff as alimony twenty-five thousand dollars as follows, viz. : Twenty-five hundred dollars on entry of judgment, and twenty-five hundred dollars and inter-

est semi-annually until the whole amount was paid; and that he also pay and discharge of record, within five years from date of judgment, a mortgage covering the premises No. 357 West 34th street, on which there was due and unpaid the sum of thirteen thousand five hundred dollars, and that he also give to the plaintiff his bond, with security, for the performance of the judgment.

" Thereupon the defendant and his brother, Charles Ensign, executed and delivered to the plaintiff the bond required by the judgment.

" A few days before the judgment for divorce was entered, and in anticipation of it, Elisha W. Ensign and wife conveyed to William C. Traphagen of the city of New York, the attorney for plaintiff in the divorce suit, the premises situated at Fremont, Ohio.

" After the judgment for divorce was entered, Traphagen conveyed the premises to Nathaniel Jarvis, Jr., and the latter executed a declaration of trust December 15th, 1875, acknowledging that he held the premises as security for the fulfillment of the bond given in pursuance of the judgment for divorce, and agreeing to sell the property so soon as he deemed it prudent and practicable ; if at the time of the sale there was less due on the bond than the amount realized he was to pay the balance to Charles Ensign, and if the bond had been paid he was to pay to Charles Ensign the net proceeds of the sale. The trustee also agreed that if at any time before sale Elisha W. Ensign or Charles Ensign paid or fulfilled the bond he would convey the premises to Charles Ensign, or to his representatives or assigns.

" Elisha W. Ensign died in October, 1877, in possession of the Fremont premises, leaving a will, upon which letters testamentary issued to his brother, Charles Ensign.

" Elisha W. Ensign, in his lifetime, and Charles Ensign, as his executor, made various payments to Jennie Ensign on account of her alimony, and on the 30th of December, 1878, the full amount of $25,000 and interest had been paid.

" Charles Ensign died on the 3rd of December, 1880, in possession of the Fremont property as Elisha's executor.

" On the 7th of January, 1881, the defendant Cornelia Ham-

ilton was appointed administratrix with the will annexed of the estate of Elisha W. Ensign.

"On the 21st of February, 1882, Sherman S. Rogers, the attorney for Cornelia Hamilton, purchased and took an assignment of the bond and mortgage covering the 34th street premises in the city of New York, there being then due thereon $7,298.81.

"On the 13th of March, 1888, the defendant Cornelia Hamilton entered into a contract for the sale of the Fremont property for $7,000, and prior to that time Mr. Rogers, or his partner, had secured from Mr. Jarvis, the trustee, and one Holt, as executor and trustee of the estate of Charles Ensign, quit-claim deeds of the premises to Mrs. Hamilton, which were to be held in escrow until the mortgage on the New York property was paid and discharged.

"In order to carry out the sale of the Fremont property by conveying the title to Mrs. Hamilton, Mr. Rogers, by special agreement, on the 31st of March, 1888, caused the New York mortgage to be discharged of record, although it was not in fact paid and could not be paid until the proceeds were received from the sale of the property.

"On the same day Jennie Ensign, the plaintiff in the divorce suit, delivered to Mr. Jarvis, the trustee, her consent to the cancellation of the bond given to her by Elisha W. Ensign and Charles Ensign, and its delivery to Cornelia Hamilton as administratrix of the estate of Elisha.

"On the 5th of April, 1888, the sale of the Fremont property was consummated, Mrs. Hamilton made her deed to the purchaser, and the $7,000, proceeds of the sale, which was the full value of the premises, were received by Mr. Rogers and applied by him according to the previous agreement in payment of the New York mortgage.

"It was after this transaction had been thus construed and closed by the immediate parties in interest, or their legal representatives, that the administratrix of the estate of Charles Ensign, the surety on the bond, sought to compel Mr. Jarvis, the trustee, and Mrs. Hamilton individually and as administratrix of Elisha W. Ensign's estate, to account to her for the entire proceeds realized on the sale of the Fremont property.

87

" The plaintiff's main contention is based upon the proposition that Elisha W. Ensign and his estate rested under the obligation to extinguish the New York mortgage for the benefit of the Fremont property. The facts in this case create no such obligation; it is clear from the acts of the parties that Jennie Ensign, having secured an absolute divorce from her husband, was satisfied to receive $25,000 as alimony and the discharge of the mortgage covering her residence in the city of New York, on which there was unpaid the sum of $13,500.

" It is evident that the provisions of the judgment were well understood before it was actually entered, and that Jennie Ensign was willing to devote her Fremont property to securing the performance of the judgment in her favor. To this end she placed the title in her attorney, and immediately after entry of judgment it was conveyed to the trustee as security for the fulfillment of the bond given under the judgment. Charles Ensign had no interest in the Fremont real estate, and he appeared on the scene only as the surety of his brother, undertaking that the latter would obey the decree of the court as to alimony and the payment of the mortgage on the New York property.

" It is evident that Jennie Ensign intended to constitute her Fremont property a primary fund to secure the performance of the bond executed to her by her husband and Charles· Ensign. What her motives may have been is not disclosed by this record, but it is clear that she fully understood the situation, and consented that her Fremont property might be used in carrying out the provisions of the judgment. This purpose is evidenced by the fact that she reserved no residuary interest under the declaration of trust.

" This action on the part of Jennie Ensign was in the interest of Charles Ensign in the event Elisha W. Ensign failed to perform in full the covenants of his bond.

" This anticipated event happened, and the estate of Charles Ensign was relieved from liability to pay the balance due on the New York mortgage, and it was paid with the proceeds realized on the sale of the Fremont property.

" The only interest that Charles Ensign ever had in the Fre-

mont property was of an equitable nature to protect him as surety against the liability assumed by him when he signed his brother's bond, and that protection his estate has enjoyed. It is true that the declaration of trust provided that if the trustee sold the property and realized more than was due upon the bond the balance should be paid to Charles Ensign. It also provided, in case of sale, if the bond had been paid the net proceeds should go to Charles; also, if the bond was paid before sale by Elisha or Charles the property should be conveyed to Charles.

"It suffices to say that neither of these contingencies happened, nor does the record disclose why these remote residuary interests were vested in Charles. It is apparent that Elisha's arrangement with his divorced wife contemplated that she should be satisfied with the provisions of the judgment, and that he was to have what remained of the Fremont property after its use as a primary fund under the surety trust.

"The residuary interest vested in Charles was evidently a private arrangement between the brothers, but there is nothing in the facts of this case to justify the appellant's contention that Elisha in entering into a transaction to secure the performance of his obligations to his divorced wife, as required by the judgment, at the same time made an agreement with Charles which would secure to the latter the Fremont property free and clear.

"There is no phase of this case that directly or indirectly suggests such a result, but, on the contrary, everything points to the use of the Fremont property as a primary fund.

"Charles Ensign never paid anything as surety, and his equitable rights in the property were extinguished when the trustee sold realizing no surplus.

It is suggested by the appellant that the quit-claim deed of the Fremont property given by Holt, the executor and trustee of the estate of Charles Ensign, to Mrs. Hamilton and held by Mr. Rogers, or his partner in escrow, until the satisfaction of the New York mortgage, was void for the reason that Holt had been removed as executor before the final delivery of the deed to Mrs. Hamilton.

"Charles Ensign had no legal title in the property, and his deed, or that of his trustee, was not required to convey the fee.

"It is not necessary to pass upon the validity of this deed.

"The legal title rested in Mr. Jarvis as trustee, and his deed to Mrs. Hamilton was authorized by the declaration of trust and vested the fee in her.

"The appellant makes the further point that Mr. Rogers, having satisfied the New York mortgage while the deeds of Holt and Jarvis were still in escrow, and while he was acting as counsel for Mrs. Hamilton, the payment of the mortgage must be deemed as made at the request of Mrs. Hamilton as administratrix of Elisha Ensign's estate, and thereupon the contingency arose which bound the trustee to convey the Fremont property to the plaintiff or account to her for the proceeds.

"The trial court found that until Mr. Rogers received the proceeds of sale the mortgage in fact had not been paid although the satisfaction piece was recorded.

"The evidence sustains this finding and shows that the satisfaction of the mortgage, the cancellation and surrender of the bond, the vesting of the title in Mrs. Hamilton, the sale of the property and the payment of the proceeds to Mr. Rogers and his application of the same were all parts of one transaction.

"The trust seems to have been properly administered in an open and honorable manner by all concerned, and the provisions of the divorce judgment have been fully carried out.

"The judgment dismissing the complaint on the merits should be affirmed, with costs."

*Adelbert Moot* for appellant.

*Sherman S. Rogers* for respondents.

BARTLETT, J., reads for affirmance of judgment, with costs. All concur.